SAN ANTONIO & ARANSAS PASS RAILWAY COMPANY v.
JAMES B. NEWMAN.

Delivered December 15, 1897.

**1. Railway Company—Limitation of Ticket—Agent's Authority.**

Where a limitation of a station agent's authority in issuing drover's passes is printed on the back of the pass, without reference thereto on its face, the holder of the pass will not be bound thereby, unless it be shown that he read or knew of such limitation.

**2. Same—Liability for Expelling Passenger—Primary Wrong.**

Where the primary wrong, the act which eventually results in the train conductor expelling a passenger under the company's rule, was the fault of its station and ticket agent in wrongly making out the pass or the ticket, the company must answer for the consequences, as the wrong of such agent was the proximate cause of the expulsion.

**3. Same—Conductor's Wrong Not Waived.**

Where the wrongful act of the train conductor caused a passenger entitled to ride

on a drover's pass to draw straws with another person to decide which of them should ride on the pass, his drawing the losing straw did not justify his expulsion.

**4.  Charge of Court—Practice on Appeal.**

The fact that a qualification of an instruction at appellant's request was not sufficiently favorable to appellee is not available to appellant.

APPEAL from De Witt.   Tried below before Hon. JAMES C. WILSON.

*Proctors,* for appellant.

No brief for appellee reached the Reporter.

NEILL, ASSOCIATE JUSTICE.—This is a suit brought by the appellee against appellant to recover damages in the sum of $5000 for an alleged forcible ejection of him by the latter's conductor from one of its trains while riding thereon as a passenger upon a drover's pass, and for the value of the pass, alleged to be $75.   His petition alleged that the pass was issued to him by the duly authorized agent of appellant in accordance with the rules of the company.

The appellant pleaded, (1) a general denial; (2) specially, under oath, that when appellee entered upon its train the company had in force a rule which prescribed that two men were the maximum number which could be passed with any shipment under the same ownership, and in the same train, and had caused such rule to be printed in its form for drover's passes, and requested its agents to use said forms and to comply with said instructions; that the pass sued on was issued by its station agent at Karnes City in direct violation of said rule, which was plainly set out on the pass which was issued by its agent to three persons with one shipment under the same ownership; that therefore the pass was not issued by appellant or by its authority, but by its station agent in violation of its instruction to him in said rule set out in the pass; (3) that appellant at the time of his alleged expulsion had no right on said train, that he was claiming the right thereon as a passenger by virtue of a certain pass, the terms and conditions of which were fully set out on the reverse side of a live stock contract of shipment of thirteen cars of cattle in the same train; that it was plainly stated as one of the conditions warranting the issuance of such a pass that two men were the maximum which would be passed with one shipment under the same ownership on the same train; that the pass was issued by the agent of appellant in direct violation of said instruction of his principal, of which appellee had full knowledge by the terms and conditions of the pass itself, in that it appeared therefrom that the agent had issued it to appellee and two other persons; that at the time of the alleged expulsion the other two persons, as well as appellee, were claiming the right of transportation under said pass; that the rules of the company required that its conductors should enforce this regulation that no more than two persons should be transported with one shipment under the same ownership, and in the same train; that appellee's was the last name appearing on the

pass, and he was therefore apparently the person to whom it had been issued in excess and in violation of its conditions; that when the pass was tendered to appellant's conductor, he notified appellee and the other two persons whose names were thereon that he could not pass all three of them, and that thereupon by voluntary agreement between appellee and the other two persons, appellee left said train without any violence having been done to him by appellant's conductor, who simply performed his duty in enforcing a regulation of the company, which formed a constituent element of the pass under which appellee claimed the right of a passenger on said train.

The trial of the case, which was before a jury, resulted in a judgment for $400 in favor of appellee, and from it this appeal is prosecuted.

*Conclusions of Fact.*—On May 1, 1895, the appellant then being a common carrier of freight and passengers, there were delivered to appellant company by M. J. Baker, at Karnes City, Texas, thirteen car loads of cattle to be transported thence over appellant's road and connecting roads to Chicago, in one train by the same shipment. Tom Alexander and the appellee were employed by Baker to accompany the cattle on the train during their transportation from the place of shipment to their destination. Baker directed appellant's station agent at Karnes City who made out the contract of shipment, to put therein the names of Tom Alexander and James B. Newman, the appellee, for them to be transported with the cattle from the place of shipment to Chicago. Their names were written in such contract by the agent as directed, and when so written the contract by its terms entitled them to be carried without further compensation over appellant's road and connecting lines on the train with the cattle to their destination. There was printed on the back of the paper containing the contract these words: "Two men will be the maximum number to be passed by the same owner in the same shipment in the same train." After Alexander's and Newman's names had been written in the contract, appellant's station agent, at the request of Alexander wrote in it the named of Will Cheek. Whether this last name appeared before or after that of Newman is not shown, the contract containing the pass having been lost after it was taken up by the railroad company, and the duplicate kept by the company not being produced in evidence. Nor can we gather from the record whether any reference was made in the contract to the words above quoted printed on the back of it, nor say whether they were made a part of the contract or were merely directions of the carrier to its agents, stating a rule of the company. The appellee knew that Cheek's name had been written by the station agent in the part of the contract containing the pass, and heard the agent say that all three of the parties could go with the train on the pass. There is no evidence that appellee had ever read the words quoted which were printed on the back of the contract, or had any actual knowledge of any rule of the company limiting the number to two persons to whom such a pass could be issued.

The pass thus issued, containing the names of Alexander, appellee, and Cheek, was by the agent placed in the hands of Alexander for the use of all the parties; and by virtue of it all of them boarded the train upon which Baker's cattle were loaded  The facts thus far found are established by testimony which is uncontroverted.

Before the train reached Shiner, a station on the company's road, the contract was handed by Alexander to appellant's conductor, who, upon its inspection, told the parties that all three could not ride on the pass, and that one of them must get off.  Alexander then informed the conductor that he and appellee were in charge of the cattle, and that if anybody had to get off it should be Cheek.  To which the conductor responded one of them would have to get off, or he would put them all off.  After this, appellee and Cheek drew straws for the purpose of determining which should get off, and the short straw was drawn by appellee.  The drawing was not voluntary on appellee's part, but he was impelled by fear to participate in it; and he never agreed to abide the result.  Besides, it is not shown whether the forfeiture of his right as a passenger on the train was made to depend upon his getting the short or long straw.  On this question we have no judicial knowledge.  When the train reached Shiner, and while in rapid motion, appellant's conductor cursed appellee and peremptorily ordered him to get off, and, through fear of being forcibly thrown therefrom, he jumped from it while it was moving, fell and thereby was temporarily rendered almost insensible, to his damage in the sum of money found by the verdict.

*Conclusions of Law.*—The appellant, by special charge No. 1, requested the court to instruct the jury as follows: "In this case the authority of the station agent at Karnes City to issue the pass to these three persons is denied under oath, and there is no proof in this case that the agent had any such authority.  Therefore, you must assume that it is true that the agent had no authority to issue the pass to three persons, and his act in issuing it to three persons did not bind the defendant to carry all three persons."  This the court gave, with the following qualification: "Given with the proviso that plaintiff must have had actual knowledge of the fact that said agent had no such authority to issue said pass to three persons before he could be charged with notice thereof, or his right as a passenger affected thereby."  This qualification is assigned as error upon the grounds, (1) that the charge in its original form was correct; and (2) that it contradicts special charge number 2 given at appellant's request, which is: "Although the names of three persons appeared on said pass, yet you are charged that defendant was only required to carry two persons on said pass.  The regulation appearing on said pass was one which it was the duty of defendant's conductor to enforce, and said pass did not warrant said conductor to pass or permit to ride thereon more than two persons."

The refusal of the court to give the following special charge is also assigned as error: "Plaintiff was charged with notice of all the terms and

conditions of the printed and written pass upon which he was riding. If you believe from the evidence that one of the terms of said pass was that two was the maximum number of persons that could go with one shipment on the same train, then plaintiff must be considered by you as having had full knowledge of such condition of said pass, whether plaintiff actually read said conditions or not."

In its main charge the court instructed the jury, that "A person lawfully on a railway car and entitled to transportation is a passenger, whether the railway company receives an agreed compensation for his transportation or is compensated therefor by the charge for the car, or for transportation of property in his charge, or receives no compensation whatever. A person on a train, and having in his possession a pass issued by an agent of the company operating the train upon which he seeks transportation as a passenger, if the issuance of said pass was within the apparent scope of the agent's duties, or if the authority upon the part of the agent to issue such pass is reasonably to be presumed from the nature of his agency, and general conduct of its affairs. Hence, if you believe that the plaintiff had received a pass from the station agent of the San Antonio & Aransas Pass Railway Company at Karnes City, and that such agent had authority to issue such pass, or that, from the usual conduct of the business of such agency, or of other agencies of same company at the time, and the nature of the agency, authority on the part of the agent to issue the same was reasonably presumed, or that the issuance thereof was within the apparent scope of his agency, you will find that plaintiff was a passenger on said train, and so you will find, whether or not said pass was issued in violation of the rules of the company, if you find that plaintiff had no knowledge of such prohibitive rule of the company. You are further instructed that, in order to find that plaintiff knew of the existence of such rule, there must be evidence of such knowledge existing at the time he received the pass." This part of the charge is also assigned as error.

For convenience, these assignments are thus grouped and will be considered together with reference to the facts developed upon the trial.

It is uncontroverted that appellant's agent at Karnes City was authorized to include in the contract of shipment passes for two persons to accompany the cattle on the train to Chicago, and to return thence to the station from which the animals were shipped. There can be no doubt that Baker, the owner of the cattle, had the right to employ such hands as were entitled to such passage, and direct the company's agent, who made out the contract, to place their names therein for transportation. That he employed the appellee and Alexander to accompany the shipment and directed the agent to place their names in the contract, and that he did not employ Tom Cheek, nor direct his name written in the contract for passage, is uncontradicted. It was the plain duty of appellant's agent to appellee, as well as to the shipper, to make out the pass in accordance with his directions, so as to entitle Mr. Newman to be carried, without hindrance or molestation from anyone, on the train with the

shipment of cattle. Instead of performing this duty, in violation of a rule of his employer, he wrote in the contract, in addition to the names of Alexander and Newman, the name of Tom Cheek, and falsely informed them that it entitled all of them to transportation. It is not shown appellee was informed that the issuance of the pass to them was in violation of the company's rule. The law did not impose upon him a knowledge of this rule, but he had the right to assume that appellant's agent knew its rules and observed them in issuing the passes. The limitation of the agent's authority to issue passes to only two persons was printed on the reverse side of the contract, and it does not appear from the evidence that it was referred to or made a part of that instrument. It is clearly shown that the restriction so printed was never read by the appellee, nor called to his attention. Had it been shown that the limitation appeared upon the face of the contract, it may be that appellee would have had no right to rely upon statements contrary to such limitation made by the company's agent, without proof of his authority to make them. 4 Elliott on Railroads, sec. 1598. But as the words expressive of the limitation appear on the contract, to bind the appellee by them it must be shown he read them or knew of such restriction when he accepted the pass contained in the contract. Its acceptance did not bind him to all the terms and conditions printed thereon, in the absence of actual knowledge of them. Ray on Passenger Carriers, 516; The Majestic, 166 U. S., 380.

The agent of the company must have known when he inserted the name of the third party in the contract that the pass for all three would not be honored by the company's conductor, and that some one of the parties would probably be ejected from the train. Therefore, the insertion of Cheek's name in the pass without authority was the primary wrong proximately causing appellee's expulsion. It is well settled that a carrier of passengers must necessarily answer for all the consequences following a primary wrong. While a conductor may act strictly in accordance with the rules of a company, and do that which according to its rules he is authorized to do, it does not follow that his conduct is rightful toward the passenger. Between himself and the company, its rules upon which he acts will justify the conductor, but not as between himself, as the company's representative, and the passenger. Railway v. Brackett (Ind.), 39 N. E. Rep., 429. The appellee was one of the drovers entitled by the contract between the shipper and the company to transportation, and it was the fault of the latter's agent that such evidence of his right to carriage was not given as would be recognized by its conductor. He was led to believe by the face of the contract and statements of the station agent that he had the proper evidence of it, and relying upon it entered the train as a passenger in good faith, and presented to its conductor the only evidence of his right given him by the company through its agent. If the appellant did not furnish him with the proper token to convey the fact of his right under the contract of transportation to the mind of its conductor, the blame and consequences of the wrong must rest upon the company, the party in fault, rather than upon ap-

pellee, who is not. It seems to be settled by the weight of authority that the face of the ticket or pass is conclusive evidence to the conductor of the terms of the contract of carriage between the passenger and company. The reason for this is found in the impossibility of operating railways on any other principle, with a due regard to the convenience and safety of the rest of the traveling public, or the proper security of the company in collecting fares. The conductor can not, as against the face of the ticket, decide from the statement of the passenger what his verbal contract with the ticket was, in the absence of the counter evidence of the agent. 4 Elliott on Railroads, sec. 1594. But in this case the conductor knew that according to the rules of the company the pass was void only as to one of the parties, and, since its vice was caused by the wrong of the agent issuing it, when he was informed by appellee and Alexander that they were in charge of the cattle and had the right to accompany them on the pass, their statement not being denied by Cheek, whose name was wrongfully inserted, it was the conductor's duty to appellee, whatever may have been his duty to the company in regard to Cheek, to have allowed the appellee passage by virtue of the pass. The appellee should not have been put in such a position as required him by any method to determine for the conductor whether he or Cheek had the right of carriage on the train. The right was his under the uncontroverted facts of which appellant's conductor was informed, and should have been accorded to him. If he drew straws with Cheek to determine which should remain on the train, he was induced to do so by the conductor's failure to recognize his right as a passenger. His right as such could not, under such circumstances, be forfeited by the result of the drawing; whether the straw pulled by him was long or short, his right under the contract of the company to carry him remained the same.

In view of the facts and the law as above stated, arising from them, the special charge first quoted should not have been given in the form requested. In that form the jury might have been led to believe, without regard to other material facts, that appellee had no right on the train as a passenger. This was certainly the purpose of the charge. If it should have been given at all, it should not have been without qualification, and the only objection that can be raised to the qualification is that it did not, under the facts in this case, go far enough in favor of the appellee. Had the verdict been against him, he could complain of it, but appellant can not. The qualification is not in conflict with special charge number 2. While, according to a rule of the company, the pass may not have warranted the conductor to carry more than two persons, yet under the facts in this case it authorized him to carry appellee, for he was one of the two entitled by it to transportation. In view of what we have said, the court properly refused to give the other special charge quoted above. Nor is there any error in the main charge of which appellant can complain. Whatever may have been the agency of the person who issued the pass, or the general conduct of the affairs of his agency, it is undisputed that he had the right to issue the pass to two persons,

and that appellee was one of them who was entitled to it and to whom it was issued.

All questions arising on the remaining assignments are involved and determined against appellant in our consideration of those expressly mentioned in this opinion.

There is no error in the judgment, and it is affirmed.

*Affirmed.*